FOURTH DIVISION
March 10, 2011

Nos. 1-09-2638 & 1-09-2991 (Cons.)

| | | |
|---|---|---|
| *In re* KAREN E. | ) | Appeal from the |
| (The People of the State of Illinois, | ) | Circuit Court of |
| | ) | Cook County. |
| Petitioner-Appellee, | ) | |
| | ) | |
| v. | ) | No. 09 CoMH 3022 |
| | ) | |
| Karen E., | ) | Honorable |
| | ) | Alfred J. Paul, |
| Respondent-Appellant). | ) | Judge Presiding. |
| _____ | ) | |
| | ) | |
| *In re* KAREN E. | ) | |
| (The People of the State of Illinois, | ) | |
| | ) | |
| Petitioner-Appellee, | ) | |
| | ) | |
| v. | ) | No. 09 CoMH 3099 |
| | ) | |
| Karen E., | ) | Honorables |
| | ) | Alfred J. Paul, |
| Respondent-Appellant). | ) | Edward P. O'Brien |
| | ) | Judges Presiding. |

JUSTICE LAVIN delivered the judgment of the court, with opinion.
Presiding Justice Gallagher and Justice Pucinski concurred in the judgment and opinion.

## OPINION

Following a trial in October 2009, the trial court ordered respondent Karen E. to be involuntarily committed to a mental health facility. Three days before trial, a hearing ensued at which the trial court ordered respondent to report to a mental health facility for examination. On appeal, respondent asserts the trial court erred by limiting her appointed counsel's participation at that hearing and by conducting the hearing off the record. We affirm.

The facts concerning respondent's mental illness are not at issue on appeal. The record generally indicates that respondent was diagnosed with schizoaffective disorder in 1991. As a result of her condition, respondent had been hospitalized on several occasions. In August 2009, respondent was released from a mental facility. When respondent initially returned home, she took her required medication but apparently stopped doing so shortly thereafter. Respondent also stopped taking care of the house, began spending more time by herself and stopped eating dinner with her husband John and their daughter. Respondent would not talk to her family.

On September 17, 2009, their daughter called John at work to report that respondent was "acting weird again." When John arrived home, respondent would not talk to him. He told her that she was "getting bad again," needed to talk to someone and needed to take her medicine. He also told her that she was reverting to the depression she had previously suffered from and that if she refused to do any of the required follow-up care, including taking her medicine and seeing a therapist, they would have to see a lawyer to obtain a separation. Respondent put on her jacket and shoes and left the house without identification or money. John's attempt to stop respondent and find out where she was going was unsuccessful. As a result, he reported her missing to the police. At 4 a.m. the next morning, the police called John after finding respondent and brought her home, but she refused to get out of the police car. She would not talk to John or look at him. The officers took respondent to the hospital, where she declined to cooperate with her psychiatrist's attempts to evaluate her. Respondent was also withdrawn, had no energy, refused the doctors' treatment plan, and would not talk with the staff or other patients. In addition, her treating psychiatrist believed that outside a structured environment, respondent did not know how

2

to use the resources available to her and could not provide for her basic needs, including obtaining food and shelter for herself.

On September 21, 2009, a social worker filed an emergency petition for respondent's involuntary admission pursuant to section 3-600 of the Mental Health and Developmental Disabilities Code (the Code) (405 ILCS 5/3-600 (West 2008)), asserting that respondent was in need of immediate hospitalization (case No. 09 CoMH 3022). Attorney Laurel Spahn from Legal Advocacy Service of the Illinois Guardianship and Advocacy Commission was appointed as respondent's counsel. On September 28, 2009, John filed a petition for involuntary admission by court order pursuant to section 3-700 of the Code (405 ILCS 5/3-700 (West 2008)), rather than emergency admission, and asserted that respondent was in immediate need of hospitalization (case No. 09 CoMH 3099).

At a hearing before Judge Alfred J. Paul on September 28, 2009, the assistant State's Attorney (ASA) who had been pursuing the petition represented that the State had tried to find the officers who brought respondent to the hospital but were unsuccessful. As a result, the ASA moved to voluntarily dismiss the first petition and sought to "rewrit." Following argument, Judge Paul granted the motion to dismiss case No. 09 CoMH 3022 without prejudice over respondent's objection. The State then said it was "seeking to rewrit at this time" and had two witnesses. Spahn also asked to participate in the "writ." Apparently referring to the First District's decision in *In re Nancy A.*, 344 Ill. App. 3d 540 (2003), Judge Paul indicated that no one was more familiar than him with the issue of whether Spahn could participate at this juncture because the appellate court had already considered a previous case in which Judge Paul had been

3

confronted with this issue. In response to Spahn's request, Judge Paul stated as follows:

"THE COURT: The Court will allow you to participate. If [you] run the question by me, I will let you know whether or not, I will let you in, to ask any questions. Okay?

* * *

THE COURT REPORTER: Is this on the record or not?

THE COURT: No, it's not on the record."

A discussion was then held off the record and the case was passed. When the case was recalled, the following colloquy ensued:

"MS. SPAHN: Your Honor, I would like to state, for the record, that I had no idea, this was not being transcribed, because there was a court reporter sitting here.

THE COURT: Well, that question was asked to me by the court reporter. And I said no. It's my discretion that this writ does not have to be recorded and taken down.

There is Appellate Court authority that gives me that decision. As a matter of fact, it was you and I [who] were involved in that.

MS. SPAHN: I did ask on the record at the end of the writ after [*sic*]. What happened on the writ, the State presented one witness. It was the respondent's husband. I asked to cross examine the witness, and you said you will ask me the questions, and I will see if they're appropriate to ask the witness. I

4

presented you with some questions.  You said they were not appropriate and did

not ask them.

I asked to call as witnesses for the respondent Dr. Laba (phonetic spelling)

who was present in court.  I asked to call the respondent who was present in court.

And those requests were denied.

THE COURT: Denied, right."

Spahn further stated that she had asked the court to certify certain questions for interlocutory

appeal.  Judge Paul responded that there was no question of law for which a difference of opinion

needed to be resolved and that the court had the discretion to decide the manner in which the

examination would go forward, including how many witnesses would testify, whether the hearing

would be transcribed and whether respondent's attorney would be permitted to participate.  The

court added that traditionally, a respondent's attorney was not permitted to participate.

On the same day, Judge Paul entered a written "order of detention, examination,

evaluation" in case No. 09 CoMH 3099.  The form order stated that "[t]his matter coming to be

heard on the Petition of John," the court finds that the "[s]ubject person is in need of detention

and examination."  Judge Paul checked the box requiring respondent to report to a mental health

facility for examination within 72 hours but allowing respondent to remain in her place of

residence until such time.  Judge Paul did not check the box that would require a peace officer to

immediately take respondent into custody.

The parties later signed a stipulated statement of facts regarding the proceedings in case

No. 09 CoMH 3099 which ensued on September 28, 2009.  According to the stipulation, the

State requested an order of detention for psychiatric evaluation and John was the only witness to testify. In addition, Spahn requested permission to ask John two questions regarding respondent's ability to care for herself but Judge Paul did not think the questions were appropriate and denied the request. Judge Paul also denied Spahn's request to call respondent and Dr. Leyba as witnesses for respondent, both of whom were present in court. The parties further stipulated that the "order for detention for evaluation was granted over objection, and continued for trial."

At a hearing before Judge Edward P. O'Brien on October 1, 2009, John and Dr. Leyba testified in support of the petition for involuntary admission. Following their testimony and the parties' arguments, Judge O'Brien entered a written order involuntarily admitting respondent for 90 days. Judge O'Brien found that because of respondent's mental illness, specifically schizoaffective disorder, she was unable to care for her basic needs independent of the controlled environment of the hospital facility. In addition, Judge O'Brien essentially found that respondent was incapable of providing for her basic physical needs so as to protect herself from serious harm without outside help, that she was unable to understand her need for treatment due to her illness and was reasonably expected to suffer from mental or emotional deterioration so as to endanger herself or others without outside help. Respondent timely appealed from the court's order (No. 1-09-2991), and we ordered that her two appeals be consolidated. We note, however, that respondent presents no claim arising from proceedings under the previously filed appeal (No. 1-09-2638).

As a threshold matter, the parties agree that respondent's appeal is moot because the order

of detention and examination as well as the 90-day order for involuntary admission have expired.

The parties dispute whether respondent's claims fall under an exception to the mootness doctrine.

Whether an appeal is moot presents a question of law, which we review *de novo*. *In re Alfred H.H.*, 233 Ill. 2d 345, 350 (2009). Generally, Illinois courts do not decide moot issues, render advisory opinions or consider issues where the outcome will not be affected by how the issues are decided. *In re Alfred H.H.*, 233 Ill. 2d at 351. The public interest exception to the mootness doctrine allows a court to consider an otherwise moot appeal when (1) the case presents a question of a public nature; (2) an authoritative determination is necessary for future guidance; and (3) there is a likelihood of future recurrence of the issue. *In re Andrew B.*, 237 Ill. 2d 340, 347 (2010).

The State concedes that the procedures to be followed in involuntary admission proceedings are a matter of public concern, satisfying the first prong, and there is a likelihood that the issues presented will recur, satisfying the third prong. The State argues that the second prong has not been satisfied because the facts and issues in this case are identical to those presented and resolved by this court in *In re Nancy A*. As we will explain later in further detail, we find the procedural facts in that case differ from those before us. In addition, although the issues presented therein are similar, we question the manner in which they were resolved.

Accordingly, we find that an authoritative determination is necessary for future guidance and that the public interest exception to the mootness doctrine has been satisfied.

On appeal, respondent contends the trial court violated the Code by limiting her appointed counsel's participation at the hearing on September 28, 2008, and similarly erred by

7

proceeding with a portion of that hearing off the record. Before addressing respondent's

statutory claims, we must determine the precise section of the Code pursuant to which the

challenged hearing ensued and the order for detention and examination was entered, as different

sections of the Code may implicate different procedural requirements. The State represents that

when it requested to "rewrit" at that hearing, it was seeking and obtained respondent's

"involuntary admission" pursuant to section 3-607 (405 ILCS 5/3-607 (West 2008)). The State

also refers to the order entered on September 28, 2009, as an "emergency order of detention."

Although respondent does not directly address these representations, we find the record does not

support the State's position.

The aforementioned section appears in article VI of the Code, which governs "Emergency

Admission By Certification." See 405 ILCS 5/3-600 *et seq.* (West 2008). Section 3-607, which

is titled "Court ordered temporary detention and examination," states as follows:

"When, as a result of personal observation and testimony in open court, any court

has reasonable grounds to believe that a person appearing before it is subject to

involuntary admission and in need of immediate hospitalization to protect such

person or others from physical harm, the court may enter an order for the

temporary detention and examination of such person. The order shall set forth in

detail the facts which are the basis for its conclusion. The court may order a peace

officer to take the person into custody and transport him to a mental health

facility. The person may be detained for examination for no more than 24 hours.

If a petition and certificate, as provided in this Article, are executed within the 24

8

hours, the person may be admitted and the provisions of this Article shall apply.
If no petition or certificate is executed, the person shall be released."  405 ILCS
5/3-607 (West 2008).

We note that the plain language of this statute does not require a trial court to conduct an additional hearing for the sole purpose of determining whether a section 3-607 order would be appropriate, but observe that some courts have nonetheless held such a hearing.  *In re Helen S.*, 342 Ill. App. 3d 330, 332 (2003) (on the State's request for temporary detention and examination pursuant to section 3-607, a hearing was held at which testimony was presented), *overruled on other grounds, In re Andrew B.,* 237 Ill. 2d at 355-56; *In re Clark*, 220 Ill. App. 3d 1024, 1027 (1991) (testimony was presented at a section 3-607 hearing).

Neither the written order of detention and examination, the transcript from the hearing on September 28, 2009, nor the stipulated statement of facts specifically refers to section 3-607 or an emergency.  In addition, the written order of detention and examination and the stipulated statement of facts do not state that temporary detention is necessary to protect respondent or others from physical harm or set forth details in support of such a conclusion, as required by section 3-607.  We further note that the order of detention and examination did not require a peace officer to immediately take respondent to the hospital, as permitted under section 3-607.  Although the original petition did seek emergency admission pursuant to section 3-600, that petition was dismissed.

In contrast, article VII, titled "Admission By Court Order," generally governs nonemergency involuntary commitment procedures and provides a respondent with certain

protections that are unavailable under article VI. See 405 ILCS 5/3-700 *et seq.* (2008); *In re Elkow*, 167 Ill. App. 3d 187, 191 (1988). Under section 3-701(a), "[a]ny person 18 years of age or older may execute a petition asserting that another person is subject to involuntary admission." 405 ILCS 5/3-701(a) (West 2008). Subsection (b) provides as follows:

> "The court may inquire of the petitioner whether there are reasonable grounds to believe that the facts stated in the petition are true and whether the respondent is subject to involuntary admission. The inquiry may proceed without notice to the respondent only if the petitioner alleges facts showing that an emergency exists such that immediate hospitalization is necessary and the petitioner testifies before the court as to the factual basis for the allegations." 405 ILCS 5/3-701(b) (West 2008).

See also 405 ILCS 5/3-806(a) (West 2008) ("[t]he respondent shall be present at any hearing held under this Act unless his attorney waives his right to be present and the court is satisfied by a clear showing that the respondent's attendance would subject him to substantial risk of serious physical or emotional harm"). In addition, subsection (a) of section 3-704, which is titled "Examination; detention," provides that if the court orders further examination, the court can permit the respondent to remain in her residence pending examination. 405 ILCS 5/-704(a) (West 2008).

John filed a petition for respondent's involuntary admission prior to the hearing on September 28, 2008. On this form petition, he checked the box seeking admission pursuant to section 3-700 and left the box for emergency admission pursuant to section 3-600 unchecked.

See *In re Elkow*, 167 Ill. App. 3d at 192 (no petition may be filed or hearing held unless the section on which the proceeding is based is clearly stated and failure to do so results in dismissal of the petition with reasonable leave to amend). Consistent with section 3-701(b), Judge Paul essentially inquired of John, who was the petitioner under the statute, whether there were reasonable grounds to believe that the facts in the petition were true so that respondent was subject to involuntary admission. That the ASA, rather than Judge Paul, questioned John does not alter our finding that this was consistent with section 3-701(b). See 405 ILCS 5/3-101 (West 2008) (the State's Attorney "shall attend such proceedings *** and shall ensure that petitions, reports and orders are properly prepared"). Further suggesting that Judge Paul proceeded under section 3-701(b), his order of detention and examination specified that it was entered following a hearing on John's petition. It appears from the record that respondent immediately went to the mental facility following the hearing, but it bears repeating that the order itself required only that respondent appear at the mental facility for examination within 72 hours and allowed her to remain in her residence until her examination, as permitted under section 3-704. We also observe that another written order entered by Judge Paul, which denied respondent's motion to certify questions for review, referred to "the State's request for an order of detention for psychiatric evaluation pursuant to Article VII of the Mental Health Code, 405 ILCS 5/3-700 *et seq.*" Accordingly, the record as a whole indicates that the order of detention and examination was entered pursuant to section 3-704 following a section 3-701(b) inquiry, rather than a request to proceed under section 3-607.

We now determine to what extent the Code permitted respondent's counsel to participate

11

in the inquiry pursuant to section 3-701(b). Respondent asserts that her right to counsel permitted Spahn to cross-examine John and present additional witnesses, while the State contends respondent had no right to counsel. Statutory construction presents a question of law, which we review *de novo*. *In re Andrew B.*, 237 Ill. 2d at 348. When interpreting a statute, we must determine and effectuate the legislature's intent, which is best indicated by the plain and ordinary meaning of the language. *Id.* Because involuntary commitment affects important liberty interests, those seeking another individual's confinement must strictly comply with the Code's procedural safeguards. *In re Lance H.*, 402 Ill. App. 3d 382, 386 (2010). The procedural requirements of the Code are not mere technicalities and such safeguards are intended to prevent the mental health system from becoming an oppressive tool, rather than a means to serve society. *Id.*

> Section 3-805 provides, in pertinent part, as follows:
>
> "Every respondent alleged to be subject to involuntary admission shall be represented by counsel. If the respondent is indigent or an appearance has not been entered on his behalf at the time the matter is set for hearing, the court shall appoint counsel for him. A hearing shall not proceed when a respondent is not represented by counsel unless, after conferring with counsel, the respondent requests to represent himself and the court is satisfied that the respondent has the capacity to make an informed waiver of his right to counsel." 405 ILCS 5/3-805 (West 2008).

See also 405 ILCS 5/3-800 (West 2008) (unless otherwise indicated, court hearings under chapter

III, which includes both articles VI and VII, "shall" be held pursuant to article VIII).

Based on John's petition, respondent was a person subject to involuntary admission. See 405 ILCS 5/1-119 (West 2008) (defining "person subject to involuntary admission"). It is not clear from the record whether a hearing on John's petition was set in advance or whether respondent was otherwise notified that the hearing on September 28, 2009, would extend to John's petition. Nonetheless, that hearing did in fact extend to John's petition and respondent was entitled to counsel as a result. We acknowledge section 3-701(b) provides that an inquiry pursuant to that section may proceed without notice to the respondent in certain emergency circumstances. Accordingly, this section shows that this inquiry may, by necessity, occasionally proceed *ex parte* in the absence of respondent and his counsel. See 405 ILCS 5/3-701(b) (West 2008). It does not follow that if a respondent and her counsel are present in court, section 3-701(b) authorizes the court to exclude respondent's counsel from participating. More importantly, while John's petition sought immediate hospitalization of respondent, it did not otherwise articulate the matter specifically as an emergency, which in this case is not a trifling distinction. There is no basis for the State's assertion that respondent did not have the right to counsel.

The State also contends that, as a factual matter, Spahn ceased to be respondent's attorney upon the dismissal of the first petition on September 28, 2009, and was not reappointed to represent her regarding the second petition. Thus, the State contends that respondent did not have counsel for the remainder of that hearing. Following the voluntary dismissal of the first petition, Spahn continued to act on respondent's behalf throughout the remainder of all

13

proceedings in this case without either the court or the State questioning her authority to do so. Throughout proceedings, the court repeatedly denied respondent's request to waive counsel. Because the record shows that everyone involved understood Spahn to be respondent's attorney, we are unpersuaded by the State's contention. We note that even if the State had been correct, its position that proceedings occurred in the absence of counsel would assist respondent on appeal, not the State.

In support of its assertion that respondent had no right to counsel, the State relies on *In re Nancy A*. There, the respondent's daughter filed a petition to have the respondent involuntarily admitted. Shortly thereafter, the State moved to voluntarily dismiss the petition due to the insufficiency of the allegations. After the trial court granted the motion and entered an order discharging respondent, the State immediately requested an order to detain respondent for further psychiatric evaluation and a new admission to Madden Health Center. An *ex parte* hearing regarding that request was then held off the record. The respondent's counsel requested to participate in that hearing but the court denied the request. The court stated that it did not find any provision of the Code would permit counsel to participate in an *ex parte* hearing because no lawsuit was pending. The trial court also told counsel that because no lawsuit was pending, she had no client to represent. As a result of the hearing, the trial court entered an order for further psychiatric evaluation and respondent's detention. It appears that a new petition for involuntary commitment was filed immediately after the *ex parte* hearing on the same day. Following a trial on the new petition, the trial court ordered the respondent to be involuntarily confined for up to 90 days. *In re Nancy A.*, 344 Ill. App. 3d at 544-45, 552.

14

On appeal, the respondent asserted that the trial court abused its discretion by prohibiting her attorney from participating in the hearing for an order of detention and evaluation. In considering her claim, the reviewing court apparently found from section 3-701(b)'s exception to the notice requirement and the emergency nature of the hearing, that hearings seeking emergency detention and examination were generally conducted *ex parte*. *In re Nancy A.*, 344 Ill. App. 3d at 553-54. The reviewing court also relied on the trial court's representation that no provision in the Code allowed counsel to participate in an *ex parte* hearing and that counsel had no client to represent because there was no lawsuit pending. *In re Nancy A.*, 344 Ill. App. 3d at 554. In addition, the reviewing court acknowledged the requirement of section 3-805 that every respondent who is alleged to be subject to involuntary admission shall be represented by an attorney but did not explain why this statute did not permit the respondent to have counsel appointed to participate on her behalf under those circumstances. *In re Nancy A.*, 344 Ill. App. 3d at 554 (citing 405 ILCS 5/3-805 (West 2000)). Having determined that no lawsuit was pending, that the proceeding was *ex parte*, and that counsel did not have a client to represent, this court found that "[w]hether or not respondent's counsel could have participated in that hearing since she was present was within the discretion of the trial court." *In re Nancy A.*, 344 Ill. App. 3d at 554. The reviewing court concluded that the trial court did not abuse its discretion in prohibiting respondent's attorney from participating in the hearing but did not comment on the trial court's apparent belief that it had no discretion or otherwise explain how the trial court exercised its discretion in a sound fashion. *In re Nancy A.*, 344 Ill. App. 3d at 554.

The facts recited in the opinion do not specify the statutory source for the State's request

for an order to detain the respondent for further psychiatric evaluation or the *ex parte* hearing held pursuant to that request. In addition, the facts do not state whether the second petition was filed pursuant to article VI or article VII of the Code, but it is clear that as of the time of the detention and examination hearing, no petition was pending and that the hearing proceeded on an emergency basis.

In contrast to the facts of that case, here, a nonemergency petition had been filed when the hearing in question ensued pursuant to that petition. Based on that petition, respondent was alleged to be subject to involuntary admission and, thus, was entitled to counsel. We further note that assuming *In re Nancy A.* correctly stated the standard for reviewing the trial court's decision whether to permit counsel to participate on behalf of a respondent at an emergency detention hearing, we question whether any sound reason exists for prohibiting the participation of counsel who is ready and willing to participate. See *In re Helen S.*, 342 Ill. App. 3d at 332 (the respondent's attorney directly participated in a section 3-607 hearing).

Having determined that Spahn was entitled to represent respondent at the hearing on September 28, 2009, the question remains whether the court improperly limited Spahn's participation. Section 3-701(b) does not specify what type of inquiry is necessary, *i.e.*, an informal inquiry conducted by the trial judge or a more formal inquiry at which any witness is examined by the parties. As a result, it appears that a trial court has discretion regarding how the inquiry shall proceed. Nonetheless, we find that whereas here, the court permitted the State to present and directly examine the petitioner as a witness, the court abused its discretion by denying the respondent's counsel the opportunity to cross-examine the petitioner. We find no

reason for the disparate treatment of respondent that resulted from requiring her counsel to filter all questions through the trial judge. Assuming the court was attempting to expeditiously resolve this matter, the benefit to be gained from the procedure here was minimal when compared with the benefit of permitting respondent's attorney to expose any doubts regarding the reasonableness of John's belief that respondent needed to be involuntarily admitted.

With that said, this error does not require reversal because the record does not show respondent suffered prejudice. *In re Lisa G.C.*, 373 Ill. App. 3d 586, 590 (2007) (reversal for failure to comply with the Code is required only where the respondent is prejudiced by such failure). The stipulated statement of facts from the hearing on September 28, 2009, generically states that the trial court denied Spahn's request to ask John two questions related to respondent's ability to care for herself and that the court did not think the questions were appropriate. We can only speculate as to what those specific questions were. To determine what follow-up questions may have been asked had Spahn been permitted to freely submit questions directly to John would require even further speculation. We cannot find prejudice based entirely on speculation.

We also find the court properly exercised its discretion by denying Spahn's request to have respondent and Dr. Leyba testify. Section 3-701(b) specifically grants the court discretion to "inquire of the petitioner" but makes no mention of any other parties. In addition, permitting the testimony of other parties presents the risk that a mere "inquiry" will transform into a mini trial. Here, the stipulated facts from the hearing indicate that John's testimony was sufficient for the trial court to determine whether there were reasonable grounds to believe the facts in the petition were true and that respondent was subject to involuntary admission. We find the trial

17

court did not abuse its discretion by deciding that further testimony was not needed at this preliminary stage.

Next, respondent asserts that a hearing for an order of detention and examination pursuant to article VII must be recorded verbatim. Section 3-817 states that "[a] verbatim record shall be made of all judicial hearings held pursuant to this Chapter." 405 ILCS 5/3-817 (West 2008). The chapter referred to is chapter III of the Code, which encompasses both articles VI and VII. Because the judicial hearing on September 28, 2009, was held pursuant to chapter III, the trial court was required to make a verbatim record and erred by conducting a portion of the proceeding off of the record.

The State does not acknowledge section 3-817, but again relies on this court's prior decision in *In re Nancy A.* There, the respondent argued on appeal that she was entitled to a transcript of the hearing leading to the entry of the emergency order for detention and examination, rather than arguing that the hearing should have been recorded. *In re Nancy A.*, 344 Ill. App. 3d at 554. In rejecting the respondent's claim, the reviewing court held that because the hearing was conducted off the record, no transcript existed. The reviewing court further stated "there is no requirement in the Code that detention hearings be conducted on the record, and respondent has not stated how the lack of transcript has prejudiced her." *In re Nancy A.*, 344 Ill. App. 3d at 554. It appears from this analysis that the parties in *In re Nancy A.* did not bring section 3-817 to the court's attention, as it is clearly impossible to obtain a "verbatim" record of a proceeding which is held off the record. Accordingly, we are unpersuaded by the State's reliance on that case.

18

Nonetheless, our supreme court has held that failure to comply with even mandatory provisions of the Code can be harmless error and cause no prejudice to a respondent. See *In re Nau*, 153 Ill. 2d 406, 416, 419, 420-23 (1992). We also note that aside from *In re Nancy A.*, on one occasion this court has found that the failure to strictly comply with section 3-817 was not reversible error. *In re Timothy H.*, 301 Ill. App. 3d 1008, 1013 (1998). We acknowledge that following *Nau*, this court has stated that although it is appropriate to consider any resulting prejudice under an abuse of discretion standard, prejudice is irrelevant to violations of mandatory provisions of the Code. *In re Michael D.*, 306 Ill. App. 3d 25, 28 (1999). Because the court in that case failed to consider *Nau*, we find it appropriate to determine whether any prejudice resulted from this error.

We find no prejudice under these circumstances, since respondent's counsel and the State agreed to a stipulated statement of facts from that proceeding. To the extent we have observed certain omissions in that statement of facts, it appears to have been the product of the parties' oversight, rather than an inability to reconstruct the record. Any error or prejudice to be attributed to respondent's counsel's failure to include more detail in the statement of facts is a separate issue from the court's failure to conduct the hearing on the record. The record does not show respondent was prejudiced by the court's error, and accordingly, we find reversal is not warranted.

For the foregoing reasons, we affirm the judgments on appeal.

Affirmed.

19

1-09-2638 & 1-09-2991

| Please Use Following Form:<br><br>Complete TITLE of Case | *In re* KAREN E.<br>(The People of the State of Illinois,<br><br>    Petitioner-Appellee,<br><br>        v.<br><br>Karen E.,<br><br>    Respondent-Appellant).<br>_____<br><br>*In re* KAREN E.<br>(The People of the State of Illinois,<br><br>    Petitioner-Appellee,<br><br>        v.<br><br>Karen E.,<br><br>    Respondent-Appellant). | Appeal from the Circuit Court of Cook County.<br><br>No. 09 CoMH 3022<br><br>Honorable Alfred J. Paul, Judge Presiding.<br><br><br><br>No. 09 CoMH 3099<br><br>Honorables Alfred J. Paul, Edward P. O'Brien Judges Presiding. |
|---|---|---|
| Docket No.<br><br>COURT<br><br>Opinion Filed | Nos. 1-09-2638 & 1-09-2991 (Cons.)<br>Appellate Court of Illinois<br>First District, FOURTH Division<br><br>March 10, 2011<br>(Give month, day and year) | |
| JUSTICES | JUSTICE LAVIN delivered the judgment of the court, with opinion.<br>Gallagher, P.J., and Pucinski, J., concurred. | |
| APPEAL from the Circuit Ct. of Cook County. | Lower Court and Trial Judge(s) in form indicated in the margin:<br>The Honorables Alfred J. Paul and Edward P. O'Brien, Judges Presiding. | |

1-09-2638 & 1-09-2991

| | |
|---|---|
| For APPELLANTS, John Doe, of Chicago.<br><br>For APPELLEES, Smith and Smith of Chicago, Joseph Brown, (of Counsel)<br><br>Also add attorneys for third-party appellants or appellees. | Indicate if attorney represents APPELLANTS or APPELLEES and include attorneys of counsel.  Indicate the word NONE if not represented.<br><br>Attorneys for<br>**Respondent/Appellant:**<br><div align="center">Veronique Baker<br>Laurel Spahn, Staff Attorney<br>Legal Advocacy Service<br>Illinois Guardianship & Advocacy Commission, West Suburban Office<br>P.O. Box 7009<br>Hines, IL 60141-7009<br>708.338.7500</div><br>Attorneys for **Petitioner/Appellee**:<br><br><div align="center">Anita Alvarez<br>Alan J. Spellberg, Marie Quinlivan Czech, Mary Beth Kinnerk, Of Counsel<br>State's Attorney, County of Cook<br>Room 309, Daley Center<br>Chicago, IL 60602</div> |